ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

2010 FEB 12  PM 11: 22

DEPUTY CLERK _____

Patent Compliance Group, Inc.,
Relator,

v.

Brunswick Corporation
Defendant.

**JURY TRIAL DEMANDED**

Case No. _____

**3-10CV0287-K**

\# 38286

## COMPLAINT FOR FALSE MARKING

*Qui tam* relator Patent Compliance Group, Inc. ("Patent Compliance Group"), for its

Complaint against Defendant Brunswick Corporation ("Defendant"), alleges, based on its own

personal knowledge with respect to its own actions and based upon information and belief with

respect to all others' actions, as follows:

### BACKGROUND

1.      This is an action for false patent marking under Title 35, Section 292, of the

United States Code.

2.      Defendant has violated 35 U.S.C. § 292(a) by marking unpatented articles with

the purpose of deceiving the public.  More specifically, Defendant has, with the purpose of

deceiving the public:

      (i)      marked products with patents that have expired and, therefore, do not and
cannot cover the marked products;

      (ii)     marked products with patents having a scope which does not cover the
marked products;

      (iii)    marked products with language indicating that the products are the subject
of pending patent applications when no relevant application is pending;
and/or

(iv)    used in advertising in connection with unpatented products the word "patent" and/or any word or number importing that the product is patented.

3.    The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain.

4.    False patent marking is a serious problem. Acts of false marking deter innovation and stifle competition in the marketplace. If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement. False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete. Furthermore, false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article. In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can

result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.  False markings may also create a misleading impression that the falsely marked product is technologically superior to previously available ones, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

5.      The false marking statute explicitly permits *qui tam* actions.  By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

6.      Patent Compliance Group, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendant's violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

### THE PARTIES

7.      Patent Compliance Group is a Texas corporation with its principal place of business at 4223 Buena Vista Street, Suite 4.

8.      Patent Compliance Group exists to conduct all lawful business, including but not limited to enforcing the false marking statute.

9.      Patent Compliance Group represents the United States and the public, including Defendant's existing and future competitors.

10.     Defendant is a Delaware corporation with its principal place of business at 1 N. Field Court, Lake Forest, Illinois.

11.     Defendant regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant can be served with

process through any of its agents including officers or directors or its registered agent, C T

Corporation System, 350 North St. Paul St., Dallas, Texas 75201.  In the alternative, Defendant

has not designated or maintained a resident agent for service of process although Defendant is

required to do so by statute and/or engages in business in Texas.  Therefore, the Secretary of

State is an agent for service of process on Defendant.

### JURISDICTION AND VENUE

12.     This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§

1331 and 1338(a).

13.     This Court has personal jurisdiction over Defendant.  Defendant has conducted

and does conduct business within the State of Texas.  Defendant, directly or through subsidiaries

or intermediaries, offers for sale, sells, marks and/or advertises the products that are the subject

of this Complaint in the United States, the State of Texas, and the Northern District of Texas.

14.     Defendant has voluntarily sold the products that are the subject of this Complaint

in this District, either directly to customers in this District or through intermediaries with the

expectation that the products will be sold and distributed to customers in this District.  These

products have been and continue to be purchased and used by consumers in the Northern District

of Texas.  Defendant has committed acts of false marking within the State of Texas and, more

particularly, within the Northern District of Texas.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395(a),

because (i) Defendant's products that are the subject matter of this cause of action are advertised,

marked, offered for sale, and/or sold in various retail stores and/or on the Internet in this District;

(ii) a substantial part of the events or omissions giving rise to the claim occurred in this District;

and (iii) Defendant is subject to personal jurisdiction in this District, as described above.

16.    Patent Compliance Group brings this action under 35 U.S.C. § 292(b), which provides that any person may sue for civil monetary penalties for false patent marking.

FACTS

17.    Patent Compliance Group incorporates by reference the foregoing paragraphs as if fully set forth herein.

18.    Defendant is a large, sophisticated company with approximately 20,000 employees.

19.    Defendant has, or regularly retains, sophisticated legal counsel.

20.    Defendant has decades of experience applying for patents, obtaining patents, and/or litigating in patent infringement lawsuits.

21.    Defendant knows that a patent expires; an expired patent cannot protect any product; a patent does not cover any product that is not within the scope of its claims.

22.    Each false marking on the products identified in this Complaint is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products.

23.    Defendant's false marking of its products has wrongfully quelled competition with respect to such products thereby causing harm to Patent Compliance Group, the United States, and the public.

24.    Defendant has wrongfully and illegally advertised patent monopolies which it does not possess and, as a result, has benefited by maintaining a substantial market share with respect to the products referenced in this Complaint.

25.    Defendant marked (or caused to be marked) at least the following products: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-

Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl with the following patents: 5,044,631, D321,027, 5135449, D321,026, 5066003, D321,391, 5006004, D321,389, 5100080, D321,390, 5135456, 5171198, 5180354, D321,387, 5273505, 5273504, 5125881, 5181896, 5050873. (*See* Ex. T.)

26.    United States Patent No. D321,027 (the "'027 patent"), titled *Isolateral Decline Press Machine*, was issued by the United States Patent and Trademark Office on October 22, 1991 and expired, at the latest, on October 22, 2005.  (*See* Ex. B.)

27.    Because the '027 patent expired, at the latest, on October 22, 2005, any product or method once covered by the claims of the '027 patent is no longer protected by the patent laws of the United States.   When the '027 patent expired, its formerly protected property entered the public domain.  When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

28.    Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

29.    Defendant knew that the '027 patent expired, at the latest, on October 22, 2005.

30.    Despite the fact that the claims of the '027 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the '027 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'027 Patent Expired Products").

31.    Defendant knew that the '027 patent did not cover the '027 Patent Expired Products.

32.    Alternatively, because all monopoly rights in the '027 patent have terminated, Defendant cannot have any reasonable belief that the '027 Patent Expired Products are patented or covered by the '027 patent.

33.    Defendant intended to deceive the public by marking (or causing to be marked) the '027 Patent Expired Products with the '027 patent.

34.    United States Patent No. D321,026 (the "'026 patent"), titled *Isolateral Rowing Exercise Machine*, was issued by the United States Patent and Trademark Office on October 22, 1991 and expired, at the latest, on October 22, 2005.  (*See* Ex. D.)

35.    Because the '026 patent expired, at the latest, on October 22, 2005, any product or method once covered by the claims of the '026 patent is no longer protected by the patent laws of the United States.  When the '026 patent expired, its formerly protected property entered the public domain.  When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

36.    Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

37.    Defendant knew that the '026 patent expired, at the latest, on October 22, 2005.

38.    Despite the fact that the claims of the '026 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the '026 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'026 Patent Expired Products").

39.    Defendant knew that the '026 patent did not cover the '026 Patent Expired Products.

40.    Alternatively, because all monopoly rights in the '026 patent have terminated, Defendant cannot have any reasonable belief that the '026 Patent Expired Products are patented or covered by the '026 patent.

41.    Defendant intended to deceive the public by marking (or causing to be marked) the '026 Patent Expired Products with the '026 patent.

42.    United States Patent No. D321,391 (the "'391 patent"), titled *Leg Curl Physical Exerciser*, was issued by the United States Patent and Trademark Office on November 5, 1991 and expired, at the latest, on November 5, 2005. (*See* Ex. F.)

43.    Because the '391 patent expired, at the latest, on November 5, 2005, any product or method once covered by the claims of the '391 patent is no longer protected by the patent laws of the United States. When the '391 patent expired, its formerly protected property entered the public domain. When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

44.    Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

45.    Defendant knew that the '391 patent expired, at the latest, on November 5, 2005.

46.    Despite the fact that the claims of the '391 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the '391 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press;

(vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'391 Patent Expired Products").

47.      Defendant knew that the '391 patent did not cover the '391 Patent Expired Products.

48.      Alternatively, because all monopoly rights in the '391 patent have terminated, Defendant cannot have any reasonable belief that the '391 Patent Expired Products are patented or covered by the '391 patent.

49.      Defendant intended to deceive the public by marking (or causing to be marked) the '391 Patent Expired Products with the '391 patent.

50.      United States Patent No. D321,389 (the "'389 patent"), titled *Leg Extension Physical Exerciser*, was issued by the United States Patent and Trademark Office on November 5, 1991 and expired, at the latest, on November 5, 2005. (*See* Ex. H.)

51.      Because the '389 patent expired, at the latest, on November 5, 2005, any product or method once covered by the claims of the '389 patent is no longer protected by the patent laws of the United States.   When the '389 patent expired, its formerly protected property entered the public domain.  When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

52.      Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

53.      Defendant knew that the '389 patent expired, at the latest, on November 5, 2005.

54.      Despite the fact that the claims of the '389 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the '389 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline

- 9 -

Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'389 Patent Expired Products").

55.    Defendant knew that the '389 patent did not cover the '389 Patent Expired Products.

56.    Alternatively, because all monopoly rights in the '389 patent have terminated, Defendant cannot have any reasonable belief that the '389 Patent Expired Products are patented or covered by the '389 patent.

57.    Defendant intended to deceive the public by marking (or causing to be marked) the '389 Patent Expired Products with the '389 patent.

58.    United States Patent No. D321,390 (the "'390 patent"), titled *Leg Press Physical Exerciser*, was issued by the United States Patent and Trademark Office on November 5, 1991 and expired, at the latest, on November 5, 2005. (*See* Ex. J.)

59.    Because the '390 patent expired, at the latest, on November 5, 2005 any product or method once covered by the claims of the '390 patent is no longer protected by the patent laws of the United States.   When the '390 patent expired, its formerly protected property entered the public domain.  When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

60.    Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

61.    Defendant knew that the '390 patent expired, at the latest, on November 5, 2005.

62.    Despite the fact that the claims of the '390 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the

'390 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'390 Patent Expired Products").

63.    Defendant knew that the '390 patent did not cover the '390 Patent Expired Products.

64.    Alternatively, because all monopoly rights in the '390 patent have terminated, Defendant cannot have any reasonable belief that the '390 Patent Expired Products are patented or covered by the '390 patent.

65.    Defendant intended to deceive the public by marking (or causing to be marked) the '390 Patent Expired Products with the '390 patent.

66.    United States Patent No. D321,387 (the "'387 patent"), titled *Isolateral Physical Cuff Exerciser*, was issued by the United States Patent and Trademark Office on November 5, 1991 and expired, at the latest, on November 5, 2005. (*See* Ex. N.)

67.    Because the '387 patent expired, at the latest, on November 5, 2005, any product or method once covered by the claims of the '387 patent is no longer protected by the patent laws of the United States. When the '387 patent expired, its formerly protected property entered the public domain. When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

68.    Defendant knows that, when a patent expires, all monopoly rights in the patent terminate irrevocably.

69.    Defendant knew that the '387 patent expired, at the latest, on November 5, 2005.

- 11 -

70.     Despite the fact that the claims of the '387 patent are no longer afforded patent protection, Defendant marked (or caused to be marked) at least the following products with the '387 patent following its expiration date: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "'387 Patent Expired Products").

71.     Defendant knew that the '387 patent did not cover the '387 Patent Expired Products.

72.     Alternatively, because all monopoly rights in the '387 patent have terminated, Defendant cannot have any reasonable belief that the '387 Patent Expired Products are patented or covered by the '387 patent.

**73.**     Defendant intended to deceive the public by marking (or causing to be marked) the '387 Patent Expired Products with the '387 patent.

74.     United States Patent No. 5,044,631 (the "'631 patent"), titled *Decline Press Exercise Machine*, was issued by the United States Patent and Trademark Office on September 3, 1991. (*See* Ex. A.)  The '631 patent only covers or protects, by way of patent property right, (i) a decline press exercise machine comprising, *inter alia*, a declined seat connected to a frame and adapted to support a person in a declined seated position straddling a centered vertical plane and a declined seat connected to the frame and adapted to support a person in a declined seated position straddling a centered vertical plane; (ii) a decline press exercise machine comprising, *inter alia*, a declined seat connected to a frame and adapted to support a person in a declined seated position straddling a central vertical plane; or (iii) a decline press machine comprising,

- 12 -

*inter alia*, a declined seat connected to a frame and adapted to support a person in a declined position facing the front of the frame (collectively, the "Scope of the '631").

75.    Despite the fact that the claims of the '631 patent cover only the Scope of the '631, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '631 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Incline Press; (iii) Iso-Lateral Wide Chest; (iv) Iso-Lateral Shoulder Press; (v) Iso-Lateral Leg Extension; and (vi) Iso-Lateral Leg Curl (the "Out of Scope '631 Marked Products"). (*See* Ex. T.)  While the actual scope of the '631 patent is governed (and the Scope of the '631 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '631 patent demonstrate that the Out of Scope '631 Products clearly do not practice the '631 patent.

76.    Defendant knew that the '631 patent does not cover the Out of Scope '631 Marked Products.

77.    Alternatively, because the '631 patent unmistakably does not cover the Out of Scope '631 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '631 Marked Products are patented or covered by the '631 patent.

78.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '631 Marked Products with the '631 patent.

79.    The '027 patent only covers or protects, by way of patent property right, an ornamental design for an isolateral decline press machine as depicted in the figures of the '027 patent (the "Scope of the '027").

80.    Despite the fact that the claims of the '027 patent cover only the Scope of the '027, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '027 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Incline Press; (iii)

Iso-Lateral Wide Chest; (iv) Iso-Lateral Shoulder Press; (v) Iso-Lateral Leg Extension; and (vi)

Iso-Lateral Leg Curl (the "Out of Scope '027 Marked Products"). (*See* Ex. T.) The figures of the

'027 patent, which define the Scope of the '027 patent demonstrate that the Out of Scope '027

Products clearly do not practice the '027 patent.

81.    Defendant knew that the '027 patent does not cover the Out of Scope '027

Marked Products.

82.    Alternatively, because the '027 patent unmistakably does not cover the Out of

Scope '027 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope

'027 Marked Products are patented or covered by the '027 patent.

83.    Defendant intended to deceive the public by marking (or causing to be marked)

the Out of Scope '027 Marked Products with the '027 patent.

84.    United States Patent No. 5,135,449 (the "'449 patent"), titled *Rowing exercise

machine*, was issued by the United States Patent and Trademark Office on April 4, 1992. (*See*

Ex. C.)  The '449 patent only covers or protects, by way of patent property right, (i) rowing

exercise machine comprising, *inter alia*, a chest brace supported by a frame and centered

longitudinally on a vertical midplane, the frame being longitudinally symmetrical with respect to

the vertical midplane, and the chest brace adapted to support an exerciser facing a forward

direction along the vertical midplane; (ii) rowing exercise machine comprising, *inter alia*, a chest

brace supported by a frame and centered on a longitudinal vertical midplane through the frame,

the frame being longitudinally symmetrical with respect to the vertical midplane and the chest

brace adapted to support an exerciser facing a forward direction along the vertical midplane; or

(iii) rowing exercise machine comprising a seat supported by the frame and centered on a

vertical midplane through a frame, the frame being longitudinally symmetrical with respect to

the vertical midplane and the seat brace adapted to support an exerciser facing a forward direction along the midplane and a chest brace connected to the frame in front of the seat (collectively, the "Scope of the '449").

85.    Despite the fact that the claims of the '449 patent cover only the Scope of the '449, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '449 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '449 Marked Products"). (*See* Ex. T.)  While the actual scope of the '449 patent is governed (and the Scope of the '449 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '449 patent demonstrate that the Out of Scope '449 Products clearly do not practice the '449 patent.

86.    Defendant knew that the '449 patent does not cover the Out of Scope '449 Marked Products.

87.    Alternatively, because the '449 patent unmistakably does not cover the Out of Scope '449 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '449 Marked Products are patented or covered by the '449 patent.

88.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '449 Marked Products with the '449 patent.

89.    The '026 patent only covers or protects, by way of patent property right, an ornamental design for an isolateral rowing exercise machine as depicted in the figures of the '026 patent (the "Scope of the '026").

90.    Despite the fact that the claims of the '026 patent cover only the Scope of the '026, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '026 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '026 Marked Products"). (*See* Ex. T.) The figures of the '026 patent, which define the Scope of the '026 patent demonstrate that the Out of Scope '026 Products clearly do not practice the '026 patent.

91.    Defendant knew that the '026 patent does not cover the Out of Scope '026 Marked Products.

92.    Alternatively, because the '026 patent unmistakably does not cover the Out of Scope '026 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '026 Marked Products are patented or covered by the '026 patent.

93.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '026 Marked Products with the '026 patent.

94.    United States Patent No. 5,066,003 (the "'003 patent"), titled *Leg Curl Exercise Machine*, was issued by the United States Patent and Trademark Office on November 19, 1991. (*See* Ex. E.) The '003 patent only covers or protects, by way of patent property right, (i) a leg curl exercise machine comprising, *inter alia*, a lever pivotally connected to a frame in front of a platform, the lever adapted to hold at least one removable weight at a forward, lower end thereof and adapted to be pivoted upwardly by the back of the leg of an exerciser supported on the platform during the performance of a leg curl, the lever being pivotal in a plane that is non-parallel with respect to the central vertical plane; (ii) a leg curl exercise machine comprising, *inter alia*, a pair of levers pivotally connected to a frame in front of a platform, each lever having

a forward end adapted to hold at least one removable weight and adapted to be pivoted upwardly by one leg of an exerciser supported on the platform during the performance of a leg curl, the levers being pivotal in outer planes that are non-parallel with respect to the vertical midplane; or (iii) a leg curl exercise machine comprising, *inter alia*, a pair of pivotal levers, each lever having a forward end adapted to hold at least one removable weight and adapted to be acted upon by the leg of an exerciser supported on a platform during the performance of a leg curl, each lever adapted to pivot in an outer plane of movement that diverges from a forward end of the machine (collectively, the "Scope of the '003").

95.    Despite the fact that the claims of the '003 patent cover only the Scope of the '003, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '003 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; and (vi) Iso-Lateral Leg Extension (the "Out of Scope '003 Marked Products"). (*See* Ex. T.)  While the actual scope of the '003 patent is governed (and the Scope of the '003 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '003 patent demonstrate that the Out of Scope '003 Products clearly do not practice the '003 patent.

96.    Defendant knew that the '003 patent does not cover the Out of Scope '003 Marked Products.

97.    Alternatively, because the '003 patent unmistakably does not cover the Out of Scope '003 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '003 Marked Products are patented or covered by the '003 patent.

98.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '003 Marked Products with the '003 patent.

99.     The '391 patent only covers or protects, by way of patent property right, an ornamental design for a leg curl physical exerciser as depicted in the figures of the '391 patent (the "Scope of the '391").

100.     Despite the fact that the claims of the '391 patent cover only the Scope of the '391, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '391 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; and (vi) Iso-Lateral Leg Extension(the "Out of Scope '391 Marked Products"). (See Ex. T.)  The figures of the '391 patent, which define the Scope of the '391 patent demonstrate that the Out of Scope '391 Products clearly do not practice the '391 patent.

101.     Defendant knew that the '391 patent does not cover the Out of Scope '391 Marked Products.

102.     Alternatively, because the '391 patent unmistakably does not cover the Out of Scope '391 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '391 Marked Products are patented or covered by the '391 patent.

103.     Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '391 Marked Products with the '391 patent.

104.     United States Patent No. 5,006,004 (the "'004 patent"), titled *Topical Applicator for Liquid*, was issued by the United States Patent and Trademark Office on April 9, 1991. (*See* Ex. G.)  The '004 patent only covers or protects, by way of patent property right, (i) a dispenser for the substantially uniform topical application of a liquid product either to discrete isolated portions of the surface of an object or to the entire surface of said object, said dispenser comprising, *inter alia*, a compressible reservoir and an applicator tip and an applicator tip cover;

or (ii) a predetermined quantity of liquid product in a dispenser for the substantially uniform

topical application of said liquid product either to discrete isolated portions of the surface of an

object or to the entire surface of said object, said combination comprising, *inter alia*, a

predetermined quantity of the liquid product and a compressible reservoir and an applicator tip

and an applicator tip cover (collectively, the "Scope of the '004").

105.    Despite the fact that the claims of the '004 patent cover only the Scope of the

'004, Defendant marked (or caused to be marked) at least the following products that are clearly

out of the scope of the '004 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press;

(iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi)

Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '004 Marked

Products"). (*See* Ex. T.)  While the actual scope of the '004 patent is governed (and the Scope of

the '004 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '004 patent demonstrate that the Out of Scope '004 Products clearly do

not practice the '004 patent.

106.    Defendant knew that the '004 patent does not cover the Out of Scope '004

Marked Products.

107.    Alternatively, because the '004 patent unmistakably does not cover the Out of

Scope '004 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope

'004 Marked Products are patented or covered by the '004 patent.

108.    Defendant intended to deceive the public by marking (or causing to be marked)

the Out of Scope '004 Marked Products with the '004 patent.

109.    The '389 patent only covers or protects, by way of patent property right an ornamental design for a leg extension physical exerciser as depicted in the figures of the '389 patent (the "Scope of the '389").

110.    Despite the fact that the claims of the '389 patent cover only the Scope of the '389, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '389 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; and (vi) Iso-Lateral Leg Curl (the "Out of Scope '389 Marked Products"). (*See* Ex. T.)  The figures of the '389 patent, which define the Scope of the '389 patent demonstrate that the Out of Scope '389 Products clearly do not practice the '389 patent.

111.    Defendant knew that the '389 patent does not cover the Out of Scope '389 Marked Products.

112.    Alternatively, because the '389 patent unmistakably does not cover the Out of Scope '389 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '389 Marked Products are patented or covered by the '389 patent.

113.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '389 Marked Products with the '389 patent.

114.    United States Patent No. 5,100,080 (the "'080 patent"), titled *Rotor for Developing Sustaining and Propelling Forces in a Fluid, Steering Process, and Aircraft Equipped with Such Rotor*, was issued by the United States Patent and Trademark Office on March 31, 1992. (*See* Ex. I.)  The '080 patent only covers or protects, by way of patent property right, (i) a process for controlling a rotor connected to an airframe movable in a fluid, for exerting at each instant on said airframe sustaining and/or propelling forces desired comprising,

*inter alia*, preliminarily storing data representative of structural parameters of the rotor and

measuring and determining at each instant the relative speed of displacement of the airframe with

respect to the fluid and measuring and permanently determining during rotation, the aerodynamic

azimuth of each profiled wing and generating reference signals representative of the desired

forces on the airframe and determining permanently, for each profiled wing, from the stored

parameters, from the measured and determined values, and from the reference signals, the

instantaneous geometric angle defined by the chord of the profiled wing; or (ii) a rotor intended

to be rotated in a fluid for developing on an airframe comprising, *inter alia*, means for storing

specific data about the rotor and means for measuring and determining the relative speed of

displacement of the airframe, the speed of rotation of the rotor and the volumic mass of the fluid

and means for measuring and determining the aerodynamic azimuth of each profiled blade

curing the rotation and means for generating control signals representative of the desired forced

and means for calculating the instantaneous geometric angle of each profiled blade as a function

of the stored data, the determined values and the control signals and operating means for each

profiled blade, adapted to adjust at each instant the angular position of the blade to a calculated

value issued from the calculating means (collectively, the "Scope of the '080").

   115.  Despite the fact that the claims of the '080 patent cover only the Scope of the

'080, Defendant marked (or caused to be marked) at least the following products that are clearly

out of the scope of the '080 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press;

(iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi)

Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '080 Marked

Products"). (*See* Ex. T.) While the actual scope of the '080 patent is governed (and the Scope of

the '080 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '080 patent demonstrate that the Out of Scope '080 Products clearly do not practice the '080 patent.

116.    Defendant knew that the '080 patent does not cover the Out of Scope '080 Marked Products.

117.    Alternatively, because the '080 patent unmistakably does not cover the Out of Scope '080 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '080 Marked Products are patented or covered by the '080 patent.

118.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '080 Marked Products with the '080 patent.

119.    The '390 patent only covers or protects, by way of patent property right an ornamental design for a leg press physical exerciser as depicted in the figures of the '390 patent (the "Scope of the '390").

120.    Despite the fact that the claims of the '390 patent cover only the Scope of the '390, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '390 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '390 Marked Products"). (*See* Ex. T.)  The figures of the '390 patent, which define the Scope of the '390 patent demonstrate that the Out of Scope '390 Products clearly do not practice the '390 patent.

121.    Defendant knew that the '390 patent does not cover the Out of Scope '390 Marked Products.

122.    Alternatively, because the '390 patent unmistakably does not cover the Out of

Scope '390 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope

'390 Marked Products are patented or covered by the '390 patent.

123.    Defendant intended to deceive the public by marking (or causing to be marked)

the Out of Scope '390 Marked Products with the '390 patent.

124.    United States Patent No. 5,135,456 (the "'456 patent"), titled *Low Row Exercise*

*Machine*, was issued by the United States Patent and Trademark Office on August 4, 1992. (*See*

Ex. K.)  The '456 patent only covers or protects, by way of patent property right, (i) a low row

exercise machine comprising, *inter alia*, a seat connected to a frame along a vertical midplane

and adapted to support an exerciser in a forward facing direction and a lever having a first end

pivotally connected to the frame in front of and above a seat, the lever also including weight

supporting means adapted for holding a selectable weight resistance, the lever further having a

second end adapted to be grasped by the hand of an exerciser supported on the seat and pulled

toward the seat in a low row exercise motion; (ii) a low row exercise machine comprising, *inter*

*alia*, a pad connected to a frame along a vertical midplane and adapted to support an exerciser in

a forward facing direction and a pair of levers located on opposite sides of a midplane, each lever

including a first end pivotally connected to the frame above and in front of the pad, each lever

further including an intermediately connected hub adapted to hold a selectable weight resistance

and a handle at a second end thereof, below the pad, adapted to be grasped and pulled in a low

row exercise motion by the hand of an exerciser supported by a rearwardly directed surface of

the pad; or (iii) a low row exercise machine comprising, *inter alia*, a pair of low row exercise

means, each low row exercise means pivotally connected to a frame on opposite sides of the

midplane above and in front of a seat and support, each pair of low row exercise means including

a handle located below the support and adapted to be grasped and pulled rearwardly toward the support in a low row exercise motion by the hand of an exerciser seated on the seat and supported against the support (collectively, the "Scope of the '456").

125.    Despite the fact that the claims of the '456 patent cover only the Scope of the '456, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '456 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '456 Marked Products"). (*See* Ex. T.)  While the actual scope of the '456 patent is governed (and the Scope of the '456 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '456 patent demonstrate that the Out of Scope '456 Products clearly do not practice the '456 patent.

126.    Defendant knew that the '456 patent does not cover the Out of Scope '456 Marked Products.

127.    Alternatively, because the '456 patent unmistakably does not cover the Out of Scope '456 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '456 Marked Products are patented or covered by the '456 patent.

128.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '456 Marked Products with the '456 patent.

129.    United States Patent No. 5,171,198 (the "'198 patent"), titled *Lateral Raise Exercise Machine*, was issued by the United States Patent and Trademark Office on December 15, 1992. (*See* Ex. L.)  The '198 patent only covers or protects, by way of patent property right, (i) a lateral raise exercise machine comprising, *inter alia*, actuating means extending forwardly

from the lower end of a lever and alongside a seat and backrest and adapted to be acted upon by the arm of an exercise supported on the seat and backrest to pivotally raise the lever through a lateral shoulder abductive motion to exercise a deltoid muscle, wherein the pivot axis of the lever converges toward a vertical midplane of the frame with respect to the forward facing direction of the seat and backrest, the lever being pivotal through a plane which is oriented at an angle of less than 90.degree angle with respect to the midplane; (ii) a lateral raise exercise machine comprising, *inter alia*, actuating means connected to a lever between the midplane and one end, wherein the actuating means extending forwardly from the level alongside a seat and backrest and adapted to be acted upon by the arm of an exerciser supported on the seat and backrest to pivotally raise the lever through a lateral shoulder abductive motion to exercise a deltoid muscle, the lever pivotal about an axis to move the at least one removable weight through a plane of motion which is neither parallel with nor perpendicular to the vertical midplane, wherein the actuating means extends forwardly from the lever at a downwardly tilting angle; (iii) a lateral raise exercise machine comprising, *inter alia*, two actuating means, each actuating means located on one side of a midplane and connected to the lower end of the respective lever and adapted to be acted upon by the forearm of an exerciser supported on a seat and backrest to pivotally raise the respective lever through a lateral shoulder abductive motion to exercise a deltoid muscle, wherein the pivot axes of the levers converge toward the vertical midplane of the frame with respect to the forward facing direction of seat and backrest and each of the levers pivots through a plane of motion which is oriented at an angle of less than 90 degree angle with respect to the midplane; or (iv) a lateral raise exercise machine comprising, *inter alia*, two actuating means, each actuating means connected to a lever and adapted to be acted upon by the forearm of an exerciser supported on a seat and backrest to pivotally raise the respective lever through a lateral

- 25 -

shoulder abductive motion to exercise a deltoid muscle, the levers being pivotal about axes that converge with respect to the forward facing direction of the seat and the backrest (collectively, the "Scope of the '198").

130.    Despite the fact that the claims of the '198 patent cover only the Scope of the '198, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '198 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '198 Marked Products"). (*See* Ex. T.)  While the actual scope of the '198 patent is governed (and the Scope of the '198 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '198 patent demonstrate that the Out of Scope '198 Products clearly do not practice the '198 patent.

131.    Defendant knew that the '198 patent does not cover the Out of Scope '198 Marked Products.

132.    Alternatively, because the '198 patent unmistakably does not cover the Out of Scope '198 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '198 Marked Products are patented or covered by the '198 patent.

133.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '198 Marked Products with the '198 patent.

134.    United States Patent No. 5,180,354 (the "'354 patent"), titled *Rotary Cuff Exercise Machine*, was issued by the United States Patent and Trademark Office on January 19, 1993. (*See* Ex. M.)  The '354 patent only covers or protects, by way of patent property right, (i) a rotary cuff exercise machine comprising, *inter alia*, actuating means mounted at a free end of the

arm and adapted to be acted upon by one arm of an exerciser to pivot a lever with respect to a frame during performance of an internal rotary cuff rotation while lying face up on the platform with the exerciser's legs pointed in a first direction and during performance of an external rotary cuff rotation by the other arm of the exerciser while lying face up on the platform with the legs pointed in an opposite direction, wherein the internal and external rotations being performed with an upper portion of the respective exerciser's arm extended in a direction perpendicular from the torso of the exerciser; (ii) a rotary cuff exercise machine comprising, *inter alia*, two levers, each lever pivotally connected to a side support structure, each lever including means for providing a predetermined resistance to pivotal movement and an actuating pad for use by an exerciser lying face up on the platform to pivotally move the lever against the predetermined resistance during performance of an internal upper arm rotary cuff exercise maneuver when the legs of the exerciser are pointed in a first direction and during performance of an external upper arm rotary cuff exercise maneuver when the legs of the exerciser are pointed in a second direction, opposite the first direction, wherein said internal and external upper arm rotary cuff exercise maneuvers are performed with the exerciser supported face up on the horizontal platform and with the lower arm contacting the actuating pad and with the respective upper arm extended in a direction perpendicular from the torso of the exerciser, wherein during both internal and external rotary cuff exercise maneuvers, each lever pivots about an axis substantially aligned with the upper arm and, oriented perpendicular to the lower arm of the exerciser, the levers being independently pivotal with respect to the frame; or (iii) a rotary cuff exercise machine comprising, *inter alia*, a first rotary cuff exercise means for exercising a rotary cuff joint of an exerciser, said means connected to a frame on a side of the midplane, the rotary cuff exercise means adapted to be pivoted with respect to the frame through an internal rotation by a first arm of the exerciser lying

face up on the platform when the exerciser's legs are pointed in a first direction and through an

external rotation by a second arm of the exerciser when the exerciser is lying face up on the

platform with legs pointed in an opposite direction, said internal and external rotations being

performed with an upper portion of the respective exerciser's arm extended in a direction

perpendicular from the torso of the exerciser and a second rotary cuff exercise means for

exercising a rotary cuff joint of an exerciser, the first and second rotary cuff exercise means

located on opposite sides of the midplane and being mirror images of each other with respect to

the midplane and two sides, each side pivotally connected to the frame and hingable about a

vertical axis spaced from the midplane; each side supporting one rotary cuff exercise means

(collectively, the "Scope of the '354").

135.    Despite the fact that the claims of the '354 patent cover only the Scope of the

'354, Defendant marked (or caused to be marked) at least the following products that are clearly

out of the scope of the '354 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press;

(iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi)

Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '354 Marked

Products"). (*See* Ex. T.)  While the actual scope of the '354 patent is governed (and the Scope of

the '354 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '354 patent demonstrate that the Out of Scope '354 Products clearly do

not practice the '354 patent.

136.    Defendant knew that the '354 patent does not cover the Out of Scope '354

Marked Products.

137.    Alternatively, because the '354 patent unmistakably does not cover the Out of Scope '354 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '354 Marked Products are patented or covered by the '354 patent.

138.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '354 Marked Products with the '354 patent.

139.    The '387 patent only covers or protects, by way of patent property right an ornamental design for an isolateral shoulder cuff physical exerciser as depicted in the figures of the '387 patent (the "Scope of the '387").

140.    Despite the fact that the claims of the '387 patent cover only the Scope of the '387, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '387 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '387 Marked Products"). (*See* Ex. T.)  The figures of the '387 patent, which define the Scope of the '387 patent demonstrate that the Out of Scope '387 Products clearly do not practice the '387 patent.

141.    Defendant knew that the '387 patent does not cover the Out of Scope '387 Marked Products.

142.    Alternatively, because the '387 patent unmistakably does not cover the Out of Scope '387 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '387 Marked Products are patented or covered by the '387 patent.

143.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '387 Marked Products with the '387 patent.

144.    United States Patent No. 5,273,505 (the "'505 patent"), titled *High Row Exercise Machine*, was issued by the United States Patent and Trademark Office on November 5, 1991. (*See* Ex. O.) The '505 patent only covers or protects, by way of patent property right, (i) a high row exercise machine comprising, *inter alia*, a lever pivotally connected to a frame above and behind a seat, the lever having a rearward end adapted to hold a selectable weight resistance means and a forward end extending forwardly in front of the seat and adapted to be grasped and pulled downwardly against the force of a selected weight resistance means in a high row motion by an exerciser while supported on the seat, with the palm of the exerciser facing in the forward direction and the thumb directed toward the vertical midplane, thereby to pivotally move the lever along and through a vertical plane which converges with respect to the forward facing direction of the seat; (ii) a high row exercise machine comprising, *inter alia*, a pair of spaced levers pivotally connected to a frame on opposite sides of the vertical midplane above and behind a seat, each lever having a rearward end adapted to hold a selectable weight resistance and a forward end adapted to be grasped and pulled downwardly against a selected weight resistance through a high row motion by an exerciser while supported on the seat, with the palms of the exerciser facing in the forward direction and the thumbs directed toward the vertical midplane, the levers adapted to pivot through vertical planes of motion which converge with respect to the forward facing direction of the seat; or (iii) high row exercise machine comprising, *inter alia*, a pair of space high row exercise means located on opposite sides of a midplane, each high row exercise means including a forward end handle adapted to be grasped and pulled downwardly and slightly forwardly in a high row motion against a selected weight resistance by an exerciser while engaging the exercise support means, with the palms of the exerciser facing in the forward direction and the thumbs directed toward the vertical midplane, thereby to pivot each

respective high row exercise means about a pivot axis located above and behind the seat, each

high row exercise means adapted to be pivoted against the respective selected weight resistance

through a vertical plane of motion which converges with respect to the forward facing direction

(collectively, the "Scope of the '505").

145.    Despite the fact that the claims of the '505 patent cover only the Scope of the

'505, Defendant marked (or caused to be marked) at least the following products that are clearly

out of the scope of the '505 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press;

(iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi)

Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '505 Marked

Products"). (*See* Ex. T.)  While the actual scope of the '505 patent is governed (and the Scope of

the '505 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '505 patent demonstrate that the Out of Scope '505 Products clearly do

not practice the '505 patent.

146.    Defendant knew that the '505 patent does not cover the Out of Scope '505

Marked Products.

147.    Alternatively, because the '505 patent unmistakably does not cover the Out of

Scope '505 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope

'505 Marked Products are patented or covered by the '505 patent.

148.    Defendant intended to deceive the public by marking (or causing to be marked)

the Out of Scope '505 Marked Products with the '505 patent.

149.    United States Patent No. 5,273,504 (the "'504 patent"), titled *Behind the Neck*

*Pulldown Exercise Machine*, was issued by the United States Patent and Trademark Office on

December 28, 1993. (*See* Ex. P.)  The '504 patent only covers or protects, by way of patent

property right, (i) a behind the neck pulldown exercise machine comprising, *inter alia*, a handle connected to the rearward end of a lever and adapted to be grasped by an exerciser supported on a seat and pulled downwardly in a behind the neck pulldown motion, with the palm of the exerciser facing in the forward direction and the thumb pointed inwardly toward the midplane, thereby to pivot the lever along a plane of motion which tilts downwardly from vertical toward the midplane; (ii) a behind the neck pulldown exercise machine comprising, *inter alia*, a pair of handles located on opposite sides of a midplane, each handle connected to a rearward end of a respective lever, the handles adapted to be grasped by an exerciser supported on a seat and pulled downwardly in a behind the neck pulldown motion, with the palms of the exercise facing in the forward direction and the thumbs pointed inwardly toward the midplane, thereby to pivot the levers along planes of motion which tilt downwardly from vertical toward the midplane; or (iii) a behind the neck pulldown exercise machine comprising, *inter alia*, a pair of behind the neck pulldown means pivotally connected to a frame on opposite sides of the midplane, each behind a neck pulldown means adapted to be grasped and pulled downwardly, by an exerciser supported on a seat, with the palm of the exerciser facing in the forward direction and the thumb pointed inwardly toward the midplane, in a behind the neck pulldown motion through and along a plane of movement which tilts downwardly from vertical toward the midplane, thereby to exercise a muscle group which includes the latissimus dorsi, the rhomboids, the anterior and posterior deltoids and the trapezoids, the hold-down means preventing upward movement of the exerciser during pulldown (collectively, the "Scope of the '504").

150.    Despite the fact that the claims of the '504 patent cover only the Scope of the '504, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '504 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press;

(iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi)

Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '504 Marked

Products"). (*See* Ex. T.)  While the actual scope of the '504 patent is governed (and the Scope of

the '504 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '504 patent demonstrate that the Out of Scope '504 Products clearly do

not practice the '504 patent.

151.    Defendant knew that the '504 patent does not cover the Out of Scope '504

Marked Products.

152.    Alternatively, because the '504 patent unmistakably does not cover the Out of

Scope '504 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope

'504 Marked Products are patented or covered by the '504 patent.

153.    Defendant intended to deceive the public by marking (or causing to be marked)

the Out of Scope '504 Marked Products with the '504 patent.

154.    United States Patent No. 5,125,881 (the "'881 patent"), titled *Rear Deltoid

Excercise Machine* (sic), was issued by the United States Patent and Trademark Office on June

30, 1992. (*See* Ex.Q.)  The '881 patent only covers or protects, by way of patent property right,

(i) a rear deltoid exercise machine comprising, *inter alia*, actuating means extending from a lever

generally along the longitudinal direction of a bench and including an actuating surface adapted

to be acted upon by the back of the upper arm of an exerciser lying face down upon the bench to

pivotally raise the lever through shoulder adductive motion to exercise a rear deltoid muscle

group, the actuating surface oriented generally vertically and facing the bench when the lever is

in an initial at rest position and oriented generally horizontally and facing downwardly when the

lever has been pivotally raised; (ii) a rear deltoid exercise machine comprising, *inter alia*, two

- 33 -

actuating means, each actuating means connected to a lever and including an actuating surface adapted to be acted upon by the back of the upper arm of an exerciser lying face down upon a bench to pivotally raise the respective lever through shoulder adductive motion to exercise a rear deltoid muscle group, each actuating surface oriented generally vertically and facing a vertical midplane when the respective lever is in an initial at rest position and oriented generally horizontally and facing downwardly when the lever is pivotally raised through shoulder adductive motion; or (iii) a rear deltoid exercise machine comprising, *inter alia*, a pair of rear deltoid exercise means connected to a frame on opposite sides of the midplane adjacent a head end of a bench, each rear deltoid exercise means having an actuating surface adapted to be contacted and pivoted upwardly by a rear portion of an arm of an exerciser lying face down on the bench during performance of shoulder adductive motion to exercise a rear deltoid muscle group, each rear deltoid exercise means being independently pivotal with respect to the frame, each actuating surface of a respective rear deltoid exercise means oriented generally vertically and facing the bench when in an initial at rest position and oriented generally horizontally and facing downwardly when pivoted upwardly through shoulder adductive motion (collectively, the "Scope of the '881").

155.    Despite the fact that the claims of the '881 patent cover only the Scope of the '881, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '881 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '881 Marked Products"). (*See* Ex. T.)  While the actual scope of the '881 patent is governed (and the Scope of the '881 is further narrowed) by the complete set of claim limitations, the limitations that are

listed as the Scope of the '881 patent demonstrate that the Out of Scope '881 Products clearly do not practice the '881 patent.

156.    Defendant knew that the '881 patent does not cover the Out of Scope '881 Marked Products.

157.    Alternatively, because the '881 patent unmistakably does not cover the Out of Scope '881 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '881 Marked Products are patented or covered by the '881 patent.

158.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '881 Marked Products with the '881 patent.

159.    United States Patent No. 5,181,896 (the "'896 patent"), titled *Incline Press Exercise Machine*, was issued by the United States Patent and Trademark Office on January 26, 1993. (*See* Ex. R.) The '896 patent only covers or protects, by way of patent property right, (i) an incline press exercise machine comprising, *inter alia*, a handle connected to the lower end of a lever and adapted to be grasped and upwardly extended and adducted in an incline press motion by an exerciser supported on a seat, thereby to pivot the lever through the outer vertical plane; (ii) an incline press exercise machine comprising, *inter alia*, two handles, each handle connected to a lower forward end of a lever and adapted to be grasped and upwardly extended and adducted in an incline press motion by an exerciser supported on a seat, whereby said extension and adduction pivots the levers along the respective outer vertical planes against a predetermined weight resistance provided by the removable weights held at said lower, forward ends, the levers being independently pivotal to provide simultaneous and/or independent incline press exercise along said converging planes; or (iii) an incline press exercise machine comprising, *inter alia*, incline press exercise means pivotally connected to a frame for providing, for a person supported

in a declined position on a seat, exercise via an extended upward and adductive incline pressing motion against a selectable weight resistance, the incline pressing motion producing movement along a vertical plane that converges forwardly with respect to the front of the frame, thereby to exercise and incline group which includes the pectoral muscle, the tricep and the deltoid, the incline press exercise means including a lever with an upper rearward and connected to the frame, the lever spaced laterally from the midplane (collectively, the "Scope of the '896").

160.    Despite the fact that the claims of the '896 patent cover only the Scope of the '896, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '896 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Wide Chest; (iv) Iso-Lateral Shoulder Press; (v) Iso-Lateral Leg Extension; and (vi) Iso-Lateral Leg Curl (the "Out of Scope '896 Marked Products"). (*See* Ex. T.)  While the actual scope of the '896 patent is governed (and the Scope of the '896 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '896 patent demonstrate that the Out of Scope '896 Products clearly do not practice the '896 patent.

161.    Defendant knew that the '896 patent does not cover the Out of Scope '896 Marked Products.

162.    Alternatively, because the '896 patent unmistakably does not cover the Out of Scope '896 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '896 Marked Products are patented or covered by the '896 patent.

163.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '896 Marked Products with the '896 patent.

164.    United States Patent No. 5,050,873 (the "'873 patent"), titled *Pulldown Exercise Machine*, was issued by the United States Patent and Trademark Office on September 24, 1991.

(*See* Ex. S.)  The '873 patent only covers or protects, by way of patent property right, (i) a pulldown exercise machine comprising, *inter alia*, a handle connected to a forward end of a lever and adapted to be grasped and pulled in a downward direction by a person supported on a seat, said downward pulling motion pivoting said lever in an outer vertical plane that diverges from said first vertical plane; (ii) pulldown exercise machine comprising, *inter alia*, two handles, each handle connected to a forward end of a lever and adapted to be grasped and pulled in a downward direction by a person supported in a seat to pivot the lever along the respective outer vertical plane against a predetermined weight resistance supported at said rearward end, thereby to provide simultaneous and/or independent pulldown exercise along said diverging planes; or (iii) pulldown exercise machine comprising, *inter alia*, pulldown exercise means pivotally connected to each of two sides, each pulldown exercise means adapted to provide pulldown exercise against a selectable weight resistance and along a plane parallel to the respective side for a person supported on a seat (collectively, the "Scope of the '873").

165.    Despite the fact that the claims of the '873 patent cover only the Scope of the '873, Defendant marked (or caused to be marked) at least the following products that are clearly out of the scope of the '873 patent: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Out of Scope '873 Marked Products"). (*See* Ex. T.)  While the actual scope of the '873 patent is governed (and the Scope of the '873 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '873 patent demonstrate that the Out of Scope '873 Products clearly do not practice the '873 patent.

166.    Defendant knew that the '873 patent does not cover the Out of Scope '873 Marked Products.

167.    Alternatively, because the '873 patent unmistakably does not cover the Out of Scope '873 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '873 Marked Products are patented or covered by the '873 patent.

168.    Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '873 Marked Products with the '873 patent.

169.    Defendant has marked at least the following products with the phrase "other patents pending" when no application for patent has been made, or, if made, is not pending: (i) Iso-Lateral Bench Press; (ii) Iso-Lateral Decline Press; (iii) Iso-Lateral Incline Press; (iv) Iso-Lateral Wide Chest; (v) Iso-Lateral Shoulder Press; (vi) Iso-Lateral Leg Extension; and (vii) Iso-Lateral Leg Curl (the "Patent Pending Marked Products") (*see* Ex. T.)

170.    Defendant knew that the Patent Pending Marked Products did not have any associated patent applications pending.

171.    Alternatively, because no patent applications are pending that would cover the Patent Pending Marked Products, Defendant cannot have any reasonable belief that the Patent Pending Marked Products had any associated patent applications pending.

172.    Defendant intended to deceive the public by marking (or causing to be marked) the Patent Pending Marked Products with the phrase "other patents pending."

173.    Defendant falsely advertised the above-referenced products with expired patent numbers, patents which do not cover the scope of the products and/or language suggesting that the products were covered by pending patents or patent applications when no such patent applications were pending.

- 38 -

174.    Defendant intended to deceive the public by falsely advertising the above-referenced products with such language.

## COUNT I
### (FALSE MARKING WITH EXPIRED PATENTS)

175.    Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

176.    Defendant falsely marked the Patent Expired Products with the '027 patent, which had expired.

177.    Defendant knew or reasonably should have known that marking the '027 Patent Expired Products with the '027 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

178.    Defendant intended to deceive the public by marking the Patent Expired Products with the '027 patent.

179.    Defendant falsely marked the Patent Expired Products with the '026 patent, which had expired.

180.    Defendant knew or reasonably should have known that marking the '026 Patent Expired Products with the '026 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

181.    Defendant intended to deceive the public by marking the Patent Expired Products with the '026 patent.

182.    Defendant falsely marked the Patent Expired Products with the '391 patent, which had expired.

183.    Defendant knew or reasonably should have known that marking the '391 Patent Expired Products with the '391 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

184.    Defendant intended to deceive the public by marking the Patent Expired Products with the '391 patent.

185.    Defendant falsely marked the Patent Expired Products with the '389 patent, which had expired.

186.    Defendant knew or reasonably should have known that marking the '389 Patent Expired Products with the '389 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

187.    Defendant intended to deceive the public by marking the Patent Expired Products with the '389 patent.

188.    Defendant falsely marked the Patent Expired Products with the '390 patent, which had expired.

189.    Defendant knew or reasonably should have known that marking the '390 Patent Expired Products with the '390 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

190.    Defendant intended to deceive the public by marking the Patent Expired Products with the '390 patent.

191.    Defendant falsely marked the Patent Expired Products with the '387 patent, which had expired.

192.    Defendant knew or reasonably should have known that marking the '387 Patent Expired Products with the '387 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

193.    Defendant intended to deceive the public by marking the Patent Expired Products with the '387 patent.

194.    Defendant's actions are in violation of 35 U.S.C. § 292.

## COUNT II
### (FALSE MARKING WITH OUT OF SCOPE PATENTS)

195.    Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

196.    Defendant falsely marked the Out of Scope '631 Marked Products with the '631 patent, which has a scope that clearly does not cover the Out of Scope '631 Marked Products.

197.    Defendant knew or reasonably should have known that marking the Out of Scope '631 Marked Products with the '631 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

198.    Defendant intended to deceive the public by marking the Out of Scope '631 Marked Products with the '631 patent.

199.    Defendant falsely marked the Out of Scope '631 Marked Products with the '631 patent, which has a scope that clearly does not cover the Out of Scope '631 Marked Products.

200.    Defendant knew or reasonably should have known that marking the Out of Scope '631 Marked Products with the '631 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

201.    Defendant intended to deceive the public by marking the Out of Scope '631 Marked Products with the '631 patent.

202.    Defendant falsely marked the Out of Scope '027 Marked Products with the '027 patent, which has a scope that clearly does not cover the Out of Scope '027 Marked Products.

203.    Defendant knew or reasonably should have known that marking the Out of Scope '027 Marked Products with the '027 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

204.    Defendant intended to deceive the public by marking the Out of Scope '027 Marked Products with the '027 patent.

205.    Defendant falsely marked the Out of Scope '449 Marked Products with the '449 patent, which has a scope that clearly does not cover the Out of Scope '449 Marked Products.

206.    Defendant knew or reasonably should have known that marking the Out of Scope '449 Marked Products with the '449 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

207.    Defendant intended to deceive the public by marking the Out of Scope '449 Marked Products with the '449 patent.

208.    Defendant falsely marked the Out of Scope '026 Marked Products with the '026 patent, which has a scope that clearly does not cover the Out of Scope '026 Marked Products.

209.    Defendant knew or reasonably should have known that marking the Out of Scope '026 Marked Products with the '026 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

210.    Defendant intended to deceive the public by marking the Out of Scope '026 Marked Products with the '026 patent.

211.    Defendant falsely marked the Out of Scope '003 Marked Products with the '003 patent, which has a scope that clearly does not cover the Out of Scope '003 Marked Products.

212.    Defendant knew or reasonably should have known that marking the Out of Scope '003 Marked Products with the '003 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

213.    Defendant intended to deceive the public by marking the Out of Scope '003 Marked Products with the '003 patent.

214.    Defendant falsely marked the Out of Scope '391 Marked Products with the '391 patent, which has a scope that clearly does not cover the Out of Scope '391 Marked Products.

215.    Defendant knew or reasonably should have known that marking the Out of Scope '391 Marked Products with the '391 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

216.    Defendant intended to deceive the public by marking the Out of Scope '391 Marked Products with the '391 patent.

217.    Defendant falsely marked the Out of Scope '004 Marked Products with the '004 patent, which has a scope that clearly does not cover the Out of Scope '004 Marked Products.

218.    Defendant knew or reasonably should have known that marking the Out of Scope '004 Marked Products with the '004 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

219.    Defendant intended to deceive the public by marking the Out of Scope '004 Marked Products with the '004 patent.

220.    Defendant falsely marked the Out of Scope '389 Marked Products with the '389 patent, which has a scope that clearly does not cover the Out of Scope '389 Marked Products.

221.    Defendant knew or reasonably should have known that marking the Out of Scope '389 Marked Products with the '389 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

222.    Defendant intended to deceive the public by marking the Out of Scope '389 Marked Products with the '389 patent.

223.    Defendant falsely marked the Out of Scope '080 Marked Products with the '080 patent, which has a scope that clearly does not cover the Out of Scope '080 Marked Products.

224.    Defendant knew or reasonably should have known that marking the Out of Scope '080 Marked Products with the '080 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

225.    Defendant intended to deceive the public by marking the Out of Scope '080 Marked Products with the '080 patent.

226.    Defendant falsely marked the Out of Scope '390 Marked Products with the '390 patent, which has a scope that clearly does not cover the Out of Scope '390 Marked Products.

227.    Defendant knew or reasonably should have known that marking the Out of Scope '390 Marked Products with the '390 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

228.    Defendant intended to deceive the public by marking the Out of Scope '390 Marked Products with the '390 patent.

229.    Defendant falsely marked the Out of Scope '456 Marked Products with the '456 patent, which has a scope that clearly does not cover the Out of Scope '456 Marked Products.

230.    Defendant knew or reasonably should have known that marking the Out of Scope '456 Marked Products with the '456 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

231.    Defendant intended to deceive the public by marking the Out of Scope '456 Marked Products with the '456 patent.

232.    Defendant falsely marked the Out of Scope '198 Marked Products with the '198 patent, which has a scope that clearly does not cover the Out of Scope '198 Marked Products.

233.    Defendant knew or reasonably should have known that marking the Out of Scope '198 Marked Products with the '198 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

234.    Defendant intended to deceive the public by marking the Out of Scope '198 Marked Products with the '198 patent.

235.    Defendant falsely marked the Out of Scope '354 Marked Products with the '354 patent, which has a scope that clearly does not cover the Out of Scope '354 Marked Products.

236.    Defendant knew or reasonably should have known that marking the Out of Scope '354 Marked Products with the '354 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

237.    Defendant intended to deceive the public by marking the Out of Scope '354 Marked Products with the '354 patent.

238.    Defendant falsely marked the Out of Scope '387 Marked Products with the '387 patent, which has a scope that clearly does not cover the Out of Scope '387 Marked Products.

239.    Defendant knew or reasonably should have known that marking the Out of Scope '387 Marked Products with the '387 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

240.    Defendant intended to deceive the public by marking the Out of Scope '387 Marked Products with the '387 patent.

241.    Defendant falsely marked the Out of Scope '505 Marked Products with the '505 patent, which has a scope that clearly does not cover the Out of Scope '505 Marked Products.

242.    Defendant knew or reasonably should have known that marking the Out of Scope '505 Marked Products with the '505 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

243.    Defendant intended to deceive the public by marking the Out of Scope '505 Marked Products with the '505 patent.

244.    Defendant falsely marked the Out of Scope '504 Marked Products with the '504 patent, which has a scope that clearly does not cover the Out of Scope '504 Marked Products.

245.    Defendant knew or reasonably should have known that marking the Out of Scope '504 Marked Products with the '504 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

246.    Defendant intended to deceive the public by marking the Out of Scope '504 Marked Products with the '504 patent.

247.    Defendant falsely marked the Out of Scope '881 Marked Products with the '881 patent, which has a scope that clearly does not cover the Out of Scope '881 Marked Products.

248.    Defendant knew or reasonably should have known that marking the Out of Scope '881 Marked Products with the '881 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

249.    Defendant intended to deceive the public by marking the Out of Scope '881 Marked Products with the '881 patent.

250.    Defendant falsely marked the Out of Scope '896 Marked Products with the '896 patent, which has a scope that clearly does not cover the Out of Scope '896 Marked Products.

251.    Defendant knew or reasonably should have known that marking the Out of Scope '896 Marked Products with the '896 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

252.    Defendant intended to deceive the public by marking the Out of Scope '896 Marked Products with the '896 patent.

253.    Defendant falsely marked the Out of Scope '873 Marked Products with the '873 patent, which has a scope that clearly does not cover the Out of Scope '873 Marked Products.

254.    Defendant knew or reasonably should have known that marking the Out of Scope '873 Marked Products with the '873 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

255.    Defendant intended to deceive the public by marking the Out of Scope '873 Marked Products with the '873 patent.

256.    Defendant's actions are in violation of 35 U.S.C. § 292.

## COUNT V
### (FALSE PATENT PENDING MARKING)

257.    Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

258.    Defendant falsely marked the Patent Pending Marked Products with the phrase "other patents pending" when no application for patent has been made, or, if made, is not pending.

259.    Defendant knew or reasonably should have known that marking the Patent Pending Marked Products with the phrase "other patents pending" is in violation of 35 U.S.C. § 292, because the Patent Pending Marked Products were not the subject to any pending patent application.

260.    Defendant intended to deceive the public by marking the Patent Pending Marked Products with such language.

261.    Defendant's actions are in violation of 35 U.S.C. § 292.

## COUNT VI
### (FALSE ADVERTISING)

262.    Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

263.    Defendant falsely advertised the above-referenced products with expired patent numbers, patents which do not cover the scope of the accused products, invalid patents, and/or language suggesting that the products were covered by pending patents or patent applications.

264.    Defendant knew or reasonably should have known that falsely advertising the above-referenced products with such language is in violation of 35 U.S.C. § 292.

265.    Defendant intended to deceive the public by marking the above-referenced products with such language.

266.    Defendant's actions are in violation of 35 U.S.C. § 292.

### PRAYER FOR RELIEF

Patent Compliance Group requests the Court, pursuant to 35 U.S.C. § 292, to:

A.      Enter judgment against Defendant and in favor of Patent Compliance Group for the violations alleged in this Complaint;

B.      Enter an injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292;

C.      Order Defendant to pay a civil monetary fine of up to $500 per false marking "offense," one-half of which shall be paid to the United States and one-half of which shall be paid to Patent Compliance Group;

D.      Enter a judgment and order requiring each Defendant to pay Patent Compliance Group prejudgment and post-judgment interest on the damages awarded;

E.      Order Defendant to pay Patent Compliance Group's costs and attorney fees; and

F.      Grant Patent Compliance Group such other and further relief as it may deem just and equitable.

### JURY DEMAND

Patent Compliance Group, pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all issues so triable.

Dated: February 12, 2010

Respectfully submitted,

**ZWEBER P.C.**

By: _____
Michael C. Zweber
Texas State Bar No. 24003236
Zweber P.C.
4223 Buena Vista St., Suite 4
Dallas, Texas 75205
Telephone: 214-507-0508
Fax: 214-252-0205
mzweber@zweberlaw.com

**ATTORNEY FOR RELATOR
PATENT COMPLIANCE GROUP, INC.**